UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AMINA M.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

1:20-CV-606-LJV
DECISION & ORDER

---

On May 21, 2020, the plaintiff, Amina M. ("Amina"), brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] Docket Item 1. On January 6, 2021, Amina moved for judgment on the pleadings, Docket Item 11, and on March 8, 2021, the Commissioner responded and cross-moved for judgment

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Amina applied for both Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). *See* Docket Item 8 at 221, 227. One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R §§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI).

on the pleadings, Docket Item 12.  Amina did not reply to the Commissioner's motion, and the deadline to do so has now passed.  *See* L. R. Civ. P. 5.5(d)(3).

For the reasons stated below, this Court grants Amina's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Amina argues that the ALJ erred in three ways. Docket Item 11-1. First, she argues that the ALJ improperly evaluated the medical opinion evidence in determining her physical residual functional capacity ("RFC").[4] *Id.* at 21. Second, she argues that the ALJ improperly evaluated her credibility. *Id.* at 22. Third, she argues that the ALJ "failed to resolve the conflict between the vocational expert's testimony and the [Dictionary of Occupational Titles]." *Id.* at 25.

This Court agrees that the ALJ erred and, because that error was to Amina's prejudice, remands the matter to the Commissioner.

For claims filed before March 27, 2017, such as Amina's, the ALJ evaluates medical opinion evidence under the framework provided in 20 C.F.R. §§ 404.1527 and 416.927. Under that framework, the ALJ is required to consider every medical opinion submitted, regardless of its source, "together with the rest of the relevant evidence" in the case record. *See* 20 C.F.R. §§ 404.1527(b), (c), 416.927(b), (c). In evaluating the opinion of a consulting physician who does not have a treating relationship with the claimant,[5] the ALJ considers, *inter alia*, the examining relationship, the amount of

---

[4] A claimant's RFC "is the most [she] can still do despite [her] limitations," 20 C.F.R. §§ 404.1545, 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8 (Jan. 1, 1986)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

[5] For claims filed before March 27, 2017, the Commissioner applies the "'treating physician' rule of deference to the views of a physician engaged in primary treatment of

3

relevant evidence the source presents to support the opinion, the consistency of the opinion with the record as a whole, and the source's specialization. *See id.* §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Here, the ALJ weighed the opinions of two medical sources in formulating Amina's physical RFC.[6] The ALJ gave "little weight" to the March 30, 2017 opinion of consultative examiner David Brauer, M.D. Docket Item 8 at 66. The ALJ gave "some

---

the claimant, so long as it 'is well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record.'" *Charles W. v. Kijakazi*, 2022 WL 2207182, at *5 (W.D.N.Y. June 21, 2022) (alteration in original) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128-129 (2d Cir. 2008)). "[I]n the absence of a controlling treating physician opinion," the opinions of consultative physicians, both examining and nonexamining, "take[] on particular significance." *Montanez v. Berryhill*, 334 F. Supp. 3d 562, 564 (W.D.N.Y. Nov. 26, 2018) (quoting *Dioguardi v. Comm'r of Soc. Sec.*, 445 F.Supp.2d 288, 295 (W.D.N.Y. Aug. 11, 2006)) (internal quotation marks omitted). "In such circumstances, an ALJ must consider opinions by each of these sources using the same factors that are typically used to evaluate the opinions of treating physicians . . . and must explain in his decision the weight given to each and the reasons therefor." *Id.* (citing 20 C.F.R. §§ 404.1527(c)(1)-(6), (f)(1)). An "ALJ's failure to do so constitutes grounds for remand." *Id.*

[6] The ALJ found that Amina has the physical RFC to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), "except she can occasionally reach overhead with both upper extremities. The claimant can frequently operate hand controls, reach in all other directions, push, pull, handle, finger, and feel with both upper extremities. She can occasionally push or pull or operate foot controls with both lower extremities. The claimant can occasionally kneel, crouch, stoop, balance, and crawl, can occasionally climb stairs and ramps, and can never climb ladders, ropes[,] or scaffolds. She can never be exposed to unprotected heights or moving mechanical parts. The claimant can tolerate occasional exposure to vibration. She can never be exposed to strobe lights, flashing lights[,] or to bright lights, such as those found on a theatre stage. The claimant requires a moderate noise work environment, as [defined] in the [Dictionary of Occupational Titles] and [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles]. . . . The claimant cannot perform work requiring a specific production rate, such as assembly line work. She will be off task five percent of the workday." Docket Item 8 at 62.

weight" to the May 10, 2017 opinion of State agency consultant R. Pradhan, M.D.,[7] "to the extent that it is consistent with the determined residual functional capacity." *Id.* Those were the only two opinions about Amina's physical limitations that the ALJ addressed. *See id.* And the ALJ's evaluation of that opinion evidence, as well as the RFC derived from that evaluation, were erroneous for multiple reasons.

First, in discounting Dr. Brauer's opinion, the ALJ explained that Dr. Brauer "examined the claimant on only one occasion," presented his findings in "undefined terms," and did not review "any of the claimant's medical records."[8] *Id.; see also id.* at 430-34 (Dr. Brauer's opinion). But Dr. Pradhan *never* examined Amina, and the ALJ acknowledged that Dr. Pradhan did not adequately "define" or "assess" the limitations about which Dr. Pradhan opined.[9] *Id.* at 66; *see also id.* at 114-124 (Dr. Pradhan's

---

[7] "Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review." SSR 96-6P, 1996 WL 374180, at *1 (July 2, 1996). Opinions from these sources "are to be evaluated considering all of the factors set out in the regulations for considering opinion evidence." 1996 WL 374180, at *4 (citing 20 C.F.R. §§ 404.1527, 416.927).

[8] Dr. Brauer stated that he completed the March 2017 medical source statement "[o]n the basis of the examination today." Docket Item 8 at 434. The language of Dr. Brauer's report documenting Amina's medical history suggests that Dr. Brauer learned of Amina's past medical treatment through Amina's verbal account at the examination. *See id.* at 430-31.

[9] Moreover, Dr. Pradhan reviewed only some of Amina's records. More specifically, Dr. Pradhan's report indicated that Dr. Pradhan reviewed medical evidence from eight of the twenty-one exhibits in the administrative transcript before the ALJ, from February 22, 2017, to May 5, 2017. Docket Item 8 at 115-116 (The medical records cited by Dr. Pradhan correspond with Exhibits 1F, 3F, 4F, 5F, 6F, 7F, 14F, and 16F in the administrative transcript.). Dr. Pradhan also reviewed two documents that technically are not medical evidence—Exhibits 3E and 4E, a February 22, 2017 work

5

opinion).  So the ALJ's rationale for crediting Dr. Pradhan's opinion with "some weight" while giving Dr. Brauer's opinion "little weight" is puzzling to say the least.  And giving Dr. Pradhan's opinion some weight only "to the extent that it is consistent" with the ALJ's RFC, *see id.* at 66, does nothing more than state a truism: that the ALJ accepts what he accepts and rejects the rest.

Even more troubling, the ALJ rejected both physicians' opinions—consistent with one another—that Amina was limited in her ability to reach over her head, finding that she had the RFC to do so occasionally "with both upper extremities."  *Id.* at 62.  In reaching that conclusion, the ALJ discounted Dr. Pradhan's opinion that Amina "was limited in her ability to reach overhead" because Dr. Pradhan "did not define 'limited' with any specificity, nor did [Dr. Pradhan] assess any specific overhead reaching limitation, such as continuously, frequently, occasionally[,] or never."  *Id.* at 66 (internal quotation marks added).  And the ALJ likewise rejected Dr. Brauer's opinion that Amina had a "marked limitation" in performing activities that require lifting things over her head because Dr. Brauer did not define "marked" with any specificity.  *Id.*  Discounting the only two opinions about Amina's ability to reach overhead—opinions that were consistent with each other—and substituting the ALJ's lay judgment for those opinions clearly exceeded the ALJ's authority.  *See McBrayer v. Sec'y. of Health and Hum. Servs.*, 712 F.2d 795, 799 (2d Cir. 1983).

If the ALJ did not understand what Dr. Brauer meant by "marked," it was incumbent on him to recontact Dr. Brauer to find out what Dr. Brauer meant, not simply

---

history report and a March 21, 2017 function report.  *Id.* at 116 (citing *id.* at 255-64, 265-75).

6

to reject Dr. Brauer's opinion.  *See Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. Feb. 8, 2010) ("[I]f a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion.").  If the ALJ was puzzled as to whether Dr. Pradhan thought Amina could "continuously," or "frequently," or "occasionally," or "never" reach overhead—as he apparently was, *see* Docket Item 8 at 66—it was incumbent on the ALJ to recontact Dr. Pradhan, not simply to choose "occasionally" from the list of options as the ALJ did, *id.* at 62.  Indeed, given the ALJ's evaluation of the two opinions and his criticism of those opinions insofar as they failed to define limitations "with any specificity" or to assess them with words like "continuously, frequently, occasionally[,] or never," *id.* at 66, the ALJ's very specific conclusions about what Amina could do "frequently" and "occasionally," *id.* at 62, must have come from the ALJ's lay judgment.  *See generally Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (summary order) *as amended* (July 30, 2014) (ALJ erred in concluding "that [the claimant] could use his dominant right hand for fifty percent of the workday" when "the record provide[d] no evidence for the ALJ's specific finding").

      Worse still, the two opinions that the ALJ assessed—and the only two opinions that addressed Amina's physical limitations—came from physicians who together examined Amina a grand total of one time.  As the Second Circuit has noted, ALJs "should not rely heavily on the findings of consultative physicians after a single examination," *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013), because "consultative exams are often brief . . . and, at best, only give a glimpse of the claimant on a single

7

day," *Cruz*, 912 F.2d at 13; *see also Colgan v. Kijakazi*, 22 F.4th 353, 362 (2d Cir. 2022) ("[A]n ALJ commits legal error in resting his disability determination on 'a one-time snapshot of a claimant's status.'") (quoting *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019)).  And here, because the only opinions came from consultants who together examined Amina only once but who still found significant limitations, that suggests that there may well have been a gap in the record about Amina's physical abilities that the ALJ was required to fill before determining her RFC.  *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (An ALJ may not reject a medical source's findings "without first attempting to fill any clear gaps in the administrative record.").

The ALJ also failed to properly "consider all of the [regulatory] factors in deciding the weight" he assigned to the opinions of Dr. Pradhan and Dr. Brauer.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (factors an ALJ will consider in weighing opinion evidence). That failure warrants remand as well.  *See Falbru v. Berryhill*, 2018 WL 1553965, at *2 (W.D.N.Y. Mar. 30, 2018) ("Remand is appropriate where an ALJ fails to consider [the regulatory] factors and to adequately explain the weight given to the consultative examiner's opinion[s].").

For example, the ALJ did not sufficiently consider the evidence supporting or consistent with Dr. Pradhan's and Dr. Brauer's opinions.  *See Robert B. v. Kijakazi*, 2022 WL 1458601, at *3 (W.D.N.Y. May 9, 2022) ("The ALJ must articulate his or her consideration of the medical opinion evidence, describe the persuasiveness of each of the medical opinions, and explain how the supportability and consistency factors were weighed."); *see also* 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4).  The ALJ evaluated evidence consistent with Dr. Pradhan's opinion, but he did so only with

8

respect to the evidence that existed "as of the date of [Dr. Pradhan's] opinion," Docket Item 8 at 66; the ALJ did not evaluate the consistency of Dr. Pradhan's opinion with the rest of the record. The ALJ also did not explicitly consider any evidence at all, either consistent or inconsistent, with respect to Dr. Brauer's opinion.

Finally, it is worth noting that neither Dr. Pradhan's nor Dr. Brauer's opinions accounted for Amina's significant medical issues in the two years after those opinions were rendered but before the ALJ's decision. *See id.* at 442, 443 (Amina was diagnosed with "very severe left cubital tunnel syndrome" on May 22, 2017, and planned to undergo "surgery for left carpal tunnel release and left cubital tunnel release"); *id.* at 515 (Maritza Baez, M.D., later declined to clear Amina for surgery "due to uncontrolled [blood pressure] and glucose" levels); *id.* at 21 (In August 2019, Amina presented with "severe end-stage ulnar neuropathy involving the left upper extremity."). So to the extent that the RFC was based on opinions that were stale by the time of the ALJ's decision, that was error. *See Benitez v. Comm'r of Soc. Sec.*, 2021 WL 4239244, at *17 (S.D.N.Y. Sept. 17, 2021) (Where, as here, the "consultative examiner did not review important medical records, the consultative examiner's opinion cannot constitute . . . substantial evidence to support an RFC."). And to the extent that it was not based on either opinion—again, the only opinions in the record—the RFC came from the whole cloth and was not supported by substantial evidence.[10] *See Cosnyka v. Colvin*,

---

[10] The ALJ did not explain whether he accounted for Amina's subsequent medical history in her RFC or whether he simply based the RFC on the opinions rendered two years before the ALJ's decision. Without such an explanation, the Court cannot "assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review." *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir.2004)).

9

576 F. App'x 43, 46 (2d Cir. 2014) (summary order) (The RFC must be based on evidence in the record, not on "the ALJ's own surmise.").

For all those reasons, the ALJ erred and the case is remanded so that the ALJ can appropriately address the opinion evidence, recontact the opining physicians if the ALJ has questions about what their opinions mean, and consider obtaining an opinion from one of Amina's treating physicians.[11]

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 12, is DENIED, and Amina's motion for judgment on the pleadings, Docket Item 11, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:    July 19, 2022
          Buffalo, New York

                              */s/ Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE

---

[11] The Court "will not reach the remaining issues raised by [Amina] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").